## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

**CAROL EASTERLEY as Guardian of the
Estate and Person of MARY LOU
KUSMANOFF,**

        **Plaintiff,**                    **No. 3:16-cv-00288-DRH-SCW**

**v.**

**MICHAEL BURGETT & LYNDA
BURGETT,**

        **Defendants.**

## I.    INTRODUCTION

Carol Easterley (Mary Lou Kusmanoff's daughter), as Guardian of the Estate and person of Mary Lou Kusmanoff, filed this diversity suit[1] against Michael Burgett (Mary Lou Kusmanoff's son) and Lynda Burgett (Michael Burgett's wife) on March 18, 2016. The two-count complaint alleges the Burgetts fraudulently deprived Mary Lou Kusmanoff of access to funds belonging to her and converted said funds for their own benefit. Count I seeks an order directing the Burgetts to return to the Estate of Mary Lou Kusmanoff the sum of $160,000.00 and the title to a 2014 Chrysler van. Count II seeks an order directing the Burgetts to return the person of Mary Lou Kusmanoff to the State of Illinois.

---

[1] Carol Easterley and Mary Lou Kusmanoff are both citizens of the State of Illinois. Michael Burgett and Lynda Burgett are both citizens of the State of Texas. The amount in controversy exceeds $75,000.

Presently before the Court is the Burgetts' motion to dismiss for lack of subject matter jurisdiction (Doc. 12). Also pending are two motions to supplement the record (Docs. 22 and 25) and a motion to quash subpoenas (Doc. 29). Based on the record and the following, the Court **ORDERS** as follows:

The motions to supplement (Docs. 22 and 25) are **GRANTED.** The motion to dismiss for lack of subject matter jurisdiction (Doc. 12) is **GRANTED. Further,** in light of the dismissal, the motion to quash (Doc. 29) is **GRANTED.**

## II.    BACKGROUND

According to the complaint, between December 2014 and March 2015, the Burgetts entered the State of Illinois and fraudulently deprived Mary Lou Kusmanoff of access to funds belonging to her and wrongfully converted said funds for their own benefit. Additionally, the complaint alleges that in March of 2015, the Burgetts entered the State of Illinois under false pretenses and removed Mary Lou Kusmanoff to the State of Texas.

Thereafter, on April 17, 2015, Carol Easterly filed a petition in the Probate Court in St. Clair County, Illinois, alleging Mary Lou Kusmanoff is a disabled adult and seeking the appointment of a Guardian of the Estate and Person. Lynda Burgett filed a cross-petition for Guardianship. Michael Burgett entered his appearance as an interested person and filed discovery responses identifying himself as a respondent.

A bench trial commenced on December 2, 2015. Mary Lou Kusmanoff, represented by attorney Brian McCarthy, was present at the December 2, 2015 bench trial. Additionally, the Burgetts were present and represented by their attorney, Jack Cranley. Testimony was taken and, on December 3, 2015, the St. Clair County Probate Court continued the matter until March 1, 2016.

On March 1, 2016, the bench trial resumed. The Burgetts' attorney was present. However, the Burgetts and Mary Lou Kusmanoff failed to appear.

Additionally, on March 1, 2016, the Probate Court in St. Clair County, Illinois entered an order restraining the Burgetts from proceeding in any other court other than in St. Clair County on issues relating to probate and guardianship involving Mary Lou Kusmanoff.

During the bench trial, the St. Clair County Probate Court heard the following evidence:

(1) Testimony from two physicians, both of whom opined Mary Lou Kusmanoff suffered from mild cognitive impairment, short term memory loss, and moderate dementia. Additionally, both physicians opined Mary Lou Kusmanoff was at an increased risk of manipulation and pressure from others.

(2) The oral report of Mary Lou Kusmanoff's Guardian ad litem.

(3) Evidence pertaining to Mary Lou Kusmanoff's moderate dementia, short term memory loss and confusion, and severe physical limitations

(4) Evidence pertaining to Michael Burgett removing funds in excess of $700,000.00 from Mary Lou Kusmanoff's bank accounts and placing the same into bank accounts in his own name and Lynda Burgett's name, thereby converting the funds for the Burgetts' own benefit.

(Doc. 19-2 pp. 3-4).

On March 6, 2016, the St. Clair County Probate Court issued an order adjudicating Mary Lou Kusmanoff a disabled person and appointing Carol Easterley Guardian of Mary Lou Kusmanoff's Estate and Person. Specifically, the Probate Court concluded Mary Lou Kusmanoff "was as of December, 2014 and continues to be a disabled person due to mental deterioration and physical incapacity who is not fully able to manage her person or estate, and further because of her disability she lacks sufficient understanding to make or communicate decisions regarding the care of her person." (Doc. 19-2 p. 6). In reaching its decision, the court made the following findings:

> [Mary Lou Kusmanoff] is subject to undue influence by Michael Burgett and Lynda Burgett. There is clear and convincing evidence that the Burgetts have, in fact, exerted undue influence over Marylou Kusmanoff beginning in December 2014 and continuing to the present and have converted funds belonging to Marylou Kusmanoff for their own benefit. Carol Easterly has made no attempt to influence Marylou Kusmanoff's financial decisions and has offered evidence in her dealings with Amoco Federal Credit Union that she can provide sound assistance to Marylou Kusmanoff in the position of Guardian.

> It is in the best interest of Marylou Kusmanoff that Carol Easterly be appointed as the Guardian of the Estate and Person of Marylou Kusmanoff.

(Doc. 19-2 p. 6).

Two days later, on March 8, 2016, the Circuit Court in San Augustine County, Texas issued a Temporary Injunction and Order prohibiting Mt. Moriah Health and Rehabilitation (where Mary Lou Kusmanoff is presently housed) from turning her over to any unauthorized person (Doc. 12-1). On March 18, 2016, Lynda Burgett was appointed temporary guardian of the Person and Estate of Mary Lou Kusmanoff (Doc. 12-2). On April 8, 2016, the Circuit Court in San Augustine County issued an order restoring Mary Lou Kusmanoff to her full legal capacity (Doc. 12-3). The Order further directed Carol Easterly to turn over any and all items belonging to Ms. Kusmanoff (Doc. 12-3).  The Texas Circuit Court issued a permanent injunction on April 20, 2016, prohibiting Carol Easterly from taking Mary Lou Kusmanoff from her Texas residence (Doc. 12-4). On June 14, 2016, the Burgetts' attorney contacted Carol Easterly's attorney regarding the April 20, 2016 permanent injunction. The email states as follows:

> It is believed that Carol Easterly is in Hemphill, Texas and is attempting to personally contact Marylou Kusmanoff.
>
> As of approximately 10:00 pm, June 13, 2016 the Mount Moriah Health and Rehabilitation Center has issued a NO TRESPASSING NOTICE directed to Carol Easterly.
>
> Should Ms. Easterly step one foot on the Mt. Moriah property…, she will be arrested and cited for trespassing. You are also well aware that there is a permanent injunction prohibiting Ms. Easterly from attempting to remove or displace Ms. Kusmanoff.
>
> The Sabine County Sheriff's Department is well aware of this notice and they are prepared to execute its enforcement.

Should Ms. Easterley currently and actually be in Sabine County, I suggest you advise her to leave immediately.

(Doc. 22-1).

On July 26, 2013, Michael Burgett filed a motion to remove Carol Easterley as Guardian for Marylou Kusmanoff pursuant to 755 ILCS 5/23-2 in the litigation pending in the Circuit Court of St. Clair County, Illinois (Doc. 25). That motion alleges that Carol Easterley has repeatedly mismanaged estate assets and has taken positions contrary to the wellbeing of Ms. Kusmanoff (Doc. 25). Additionally, on July 13, 2016, Ms. Kusmanoff gave an oral and videotaped sworn statement in which she testified it was her choice to move to Texas initially and she wants to stay in Texas (Doc. 25).

### III.   ADULT GUARDIANSHIP AND PROTECTIVE PROCEEDINGS JURISDICTION ACT

The process for granting guardianship occurs in state court. Accordingly, we have more than 50 different systems for adjudicating guardianship matters.[2] The guardianship process becomes especially difficult when guardianship questions cross state lines, such as when more than one person applies for guardianship of the same person in different jurisdictions. Historically, there has been a lack of guidance regarding how to resolve dueling interstate guardianships. Additionally, state courts are not required to give another state's judgment on

---

[2] Sally Hurme & Erica Wood, Introduction, 2012 Utah L. Rev. 1157 (2012) ("In the United States we have not one guardianship system, but fifty-one and more, with tremendous variance from state to state, court to court, judge to judge--and guardian to guardian.").

guardianship full faith and credit.[3] As a consequence, interstate guardianship matters often result in protracted litigation that harms families and opens the door to abusive practices.[4]

Of particular concern is a tactic known as "granny snatching." The AARP has described *granny snatching* as "a deplorable tactic by which someone who wants control over a vulnerable individual and their assets – usually when there's a sizeable estate involved – 'snatches' that individual across state lines and immediately files for guardianship, preventing control or contact with the individual by other family members."[5]

Elder law practitioners uniformly decry the practice, arguing that it isolates and exploits vulnerable seniors; results in expensive, protracted litigation that

---

[3] A sister state is not required by full faith and credit to enforce a judicial action that is interlocutory or subject to modification under the law of the rendering state. *See Morris v. Morris,* 273 F.2d 678, 681 (7th Cir. 1960). Typically, guardianship orders are modifiable in the rendering state. As is relevant here, under the Illinois and Texas guardianship statutes, the appointment of a guardian is subject to modification. Tex. Prob. Code Ann. § 761; 755 ILCS 5/11a-20 (termination of adjudication of disability, revocation of letters, and modification); 755 ILCS 5/11a-19 (notice of ward's right to seek modification).

[4] *See e.g.,* Brittany Griffin Smith, Granny Snatching and Personal Jurisdiction-an Argument for A New Federal Interpleader, 100 KY. L.J. 411 (2012); Stephen Rauls, Family Law—Guardianship—The Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act: A Uniform Solution to an Arkansas Problem, 33 U. ARK. LITTLE ROCK L. REV. 75 (2010); Sally Balch Hurme, Crossing State Lines: Issues and Solutions in Interstate Guardianships, 37 STETSON L. REV. 87, 110-12 (2007); Charlene D. Daniel & Paula L. Hannaford, Creating the "Portable" Guardianship: Legal and Practical Implications of Probate Court Cooperation in Interstate Guardianship Cases, 13 QUINNIPIAC PROB. L.J. 351 (1999); Financial Abuse Of Elders And Other At-Risk Adults, SW028 ALI-CLE 373.

[5] Letter from Melissa Seifert, Manager of Advocacy, AARP Michigan, to Klint Kesto, Chairman, and members of the House Judiciary Committee (Dec. 8, 2015), http://house.michigan.gov/sessiondocs/2015-2016/testimony/Committee339-12-8-2015.pdf.

may deplete an estate; aggravates family disputes; delays needed care; and facilitates elder abuse.[6]

In an effort to address this and other problematic practices in the field of adult guardianship, the Uniform Adult Guardianship and Protective proceedings Jurisdiction Act ("the Act") was established.[7] The Act provides clear guidelines for determining which state has jurisdiction when guardianship disputes cross state boundaries.[8] Typically, the senior's "home" state (where the senior has been physically present over the last six months) will have original jurisdiction.[9]

The Act's uniform system avoids the legal and personal fiascos that are created when guardianship matters are being pursued in two states simultaneously. Accordingly, practitioners across the Country consistently promote the Act as a vital tool in protecting vulnerable seniors and their

---

[6] *See e.g.,* Brittany Griffin Smith, Granny Snatching and Personal Jurisdiction-an Argument for A New Federal Interpleader, 100 KY. L.J. 411 (2012); Stephen Rauls, Family Law—Guardianship—The Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act: A Uniform Solution to an Arkansas Problem, 33 U. ARK. LITTLE ROCK L. REV. 75 (2010); Sally Balch Hurme, Crossing State Lines: Issues and Solutions in Interstate Guardianships, 37 STETSON L. REV. 87, 110-12 (2007); Charlene D. Daniel & Paula L. Hannaford, Creating the "Portable" Guardianship: Legal and Practical Implications of Probate Court Cooperation in Interstate Guardianship Cases, 13 QUINNIPIAC PROB. L.J. 351 (1999); Financial Abuse Of Elders And Other At-Risk Adults, SW028 ALI-CLE 373.

[7] For information on the Act, see the Uniform Law Commission's webpage, http://www.uniformlaws.org/Act.aspx?title=Adult%20Guardianship%20and%20Protectiv e%20Proceedings%20Jurisdiction%20Act.

[8] *See* Unif. Adult Guardianship & Protective Proceedings Jurisdiction Act, A Summary, http://www.uniformlaws.org/ActSummary.aspx?title=Adult%20Guardianship%20and%20Protectiv e%20Proceedings%20Jurisdiction%20Act.

[9] *Id.*

families.[10] Indeed, since its enactment, the Act has been endorsed by elder law practitioners and numerous authoritative organizations in the field of elder law.[11] Additionally, the Act has been adopted by 45 states, the District of Columbia, and Puerto Rico.[12]

Unfortunately for the parties involved in this case, but predictably Texas has not adopted the Act. Accordingly, it is of no assistance to Ms. Kusmanoff, this litigation will be unnecessarily protracted, and justice will be delayed for Ms. Kusmanoff and her family. Although the Court is sympathetic to Ms. Kusmanoff's plight, for the reasons described below, the Court has no jurisdiction in this matter. Accordingly, the action must be dismissed and the parties must proceed in state court.

## IV.    STANDARD OF REVIEW

The subject motion is filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The Court accepts all well-pleaded

---

[10] *See e.g.*, Peter Page, *Dealing with 'Granny Snatching' Model Law Aims to Untangle Adult Guardianship*, National Law Journal, Nov. 12, 2007, http://www.nationallawjournal.com/id=900005495364/Dealing-with-Granny-snatching; Levin & Perconti, States Seek Law to Prevent "Granny Snatching", Illinois Nursing Home Abuse Blog, May 22, 2012, http://www.nationallawjournal.com/id=900005495364/Dealing-with-Granny-snatching.

[11] The Act has been endorsed by AARP, the Alzheimer's Association, the National Guardianship Association (NGA), the Conference of Chief Justices and Conference of State Court Administrators (CCJ/COSCA), the National College of Probate Judges (NCPJ), and the National Academy of Elder Law Attorneys (NAELA). The Council of State Governments (CSG) lists UAGPPJA as "Suggested State Legislation." Unif. Adult Guardianship & Protective Proceedings Jurisdiction Act, A Few Facts,http://www.uniformlaws.org/Act.aspx?title=Adult%20Guardianship%20and%20Protective%20Proceedings%20Jurisdiction%20Act .

[12] *Id.*

allegations from the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). When considering a motion to dismiss under Rule 12(b)(1), the district court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993).

## V.    DISCUSSION

This case falls within diversity jurisdiction. *See* 28 U.S.C. § 1332(a). However, the Burgetts contend jurisdiction is defeated by (1) the probate exception to federal jurisdiction; (2) the *Rooker-Feldman* doctrine; and (3) the *Younger* abstention doctrine. Additionally, the Burgetts contend the plaintiff lacks standing.

Assuming without deciding the plaintiff has standing to bring this action, the case must be dismissed on the basis of the probate exception. The probate exception is a judicially created exception that divests a court of jurisdiction over cases involving probate matters. *Storm v. Storm*, 328 F.3d 941, 943 (7th Cir. 2003). Under this exception, a federal court has no jurisdiction to probate a will or administer an estate - pure probate functions. *Marshall v. Marshall*, 547 U.S. 293, 311, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006); *Dragan v. Miller*, 679 F.2d

712, 713 (7th Cir. 1982). The exception also precludes federal courts from *interfering* with probate proceedings. *Marshall,* 547 U.S. at 311.

The prohibition on interference stems from *Markham v. Allen,* 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946):

> [I]t has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits "in favor of creditors, legatees and heirs" and other claimants against a decedent's estate "to establish their claims" so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court.

*Markham*, 326 U.S. at 494, 66 S.Ct. 296.

In the instant case, in order for the plaintiff to be successful on her claims, the court would have to render a decision on the guardianship issue in the plaintiff's favor. The Burgetts are presently challenging that very issue in the Circuit Court of St. Clair County, Illinois. Thus, if the Court maintains jurisdiction over this case, it would be interfering with concurrent probate proceedings. Such a result is prohibited under the probate exception. Accordingly, the motion to dismiss for lack of subject matter jurisdiction must be granted.

## VI.   CONCLUSION

The motions to supplement (Docs. 22 and 25) are **GRANTED.** The motion to dismiss for lack of subject matter jurisdiction (Doc. 12) is **GRANTED**. Further,

in light of the dismissal, the motion to quash (Doc. 29) is **GRANTED**. The Court

**DIRECTS** the Clerk to enter judgment reflecting the same.

   **IT IS SO ORDERED.**

Signed this 26th day of October, 2016.

Digitally signed by Judge David
R. Herndon
Date: 2016.10.26 11:52:37 -05'00'

**United States District Judge**